# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOSHUA W.[1],                                       Case No. 3:23-cv-120
      Plaintiff,                            Litkovitz, M.J.

    vs.

COMMISSIONER OF                          **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff Joshua W. brings this action under 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying his application for

disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 8), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply

memorandum (Doc. 12).

## I. Procedural Background

Plaintiff filed an application for DIB on August 17, 2021, alleging an amended onset date

of disability of May 21, 2021, due to obesity, bad knees, sleep apnea, COPD, stomach issues

caused by weight, hypertension, and arthritis. (Tr. 33-34, 169-74, 187-88, *see also* Tr. 206). The

application was denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Gregory

Beatty. Plaintiff and a vocational expert (VE) appeared and testified at the hearing on April 26,

2022. (Tr. 29-57). On May 10, 2022, the ALJ issued a decision finding plaintiff was not

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

disabled. (Tr. 12-28). This decision became the final decision of the Commissioner when the Appeals Council denied review on February 24, 2023. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

2

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since May 21, 2021, the amended alleged onset date (20 CFR 404.1571 *et seq*.).

3. [Plaintiff] has the following severe impairments: obstructive sleep apnea, osteoarthritis of the bilateral knees, cardiopulmonary obstructive disease (COPD), and obesity (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following limitations: (1) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (2) never climbing ladders, ropes, or scaffolds; (3) no work at unprotected heights or around moving mechanical parts; (4) never operating a motor vehicle; and (5) occasional exposure to extreme heat and cold, humidity, wetness, dust, odors, fumes, and pulmonary irritants.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

---

[2] Plaintiff's past relevant work was as a farm assistant manager.  There was no corresponding DOT code for this position, so the VE coded plaintiff's past job as an animal attendant, medium, heavy as actually performed level of exertion, semi-skilled position.  (Tr. 23, 53).

7. [Plaintiff] was born [in] . . . 1980 and was 40 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from May 21, 2021, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-24).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled, sedentary occupations in the national economy such as document preparer (17,000 jobs in the national economy); address clerk (2,100 jobs in the national economy); and sorter (2,000 jobs in the national economy).  (Tr. 23-24, 54).

. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Error

In his Statement of Errors, plaintiff contends the ALJ did not properly consider and evaluate the persuasiveness of the opinions of Sherry Adkins, M.D., plaintiff's treating physician, as required by 20 C.F.R. § 404.1520c, which resulted in an inaccurate RFC. (Doc. 8 at PAGEID 661). Plaintiff argues the ALJ erred in finding Dr. Adkins' opinions partially persuasive without adequately articulating the regulatory factors of supportability and consistency within his decision. *Id.*

In response, the Commissioner argues that the ALJ properly evaluated the medical evidence in the record, including the medical opinions, prior administrative medical findings, and plaintiff's allegations and testimony and determined an appropriate RFC to correspond with this evaluation. (Doc. 11 at PageID 678). According to the Commissioner, while the ALJ did not use the magic words of "supportability" and "consistency" in evaluating Dr. Adkins' opinions, when

read as a whole, the decision shows he considered these factors in evaluating the medical opinions at issue. (*Id.* at PAGEID 681).

### E. Analysis

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[4] *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[5] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

---

[4] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  "In practice, this means that the 'supportability' factor 'concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.'"  *Teresa A. v. Comm'r of Soc. Sec*., No. 2:23-cv-036, 2024 WL 62646, at *4 (S.D. Ohio Jan. 5, 2024) (quoting *Reusel v. Comm'r of Soc. Sec*., No. 5:20-cv-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021)) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

With respect to the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 404.1520c(c)(2).  An evaluation of the consistency factor "involves comparing a medical opinion or prior administrative medical finding with the evidence from other medical sources and nonmedical sources in the claim."  *Teresa A*., 2024 WL 62646, at *4 (quoting *Cindy F. v. Comm'r of Soc. Sec. Admin*., No. 3:21-cv-047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2)).

The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. §

---

[6] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

On May 21, 2021[7], plaintiff met with Dr. Adkins, his treating physician, to discuss gastric surgery and osteoarthritis of the knees. Plaintiff was 5 feet 10 inches tall, weighed 504.6 pounds, and had a BMI of 72.39.[8] (Tr. 342). Dr. Adkins assessed essential (primary) hypertension, obesity with serious comorbidity, dyspnea on exertion, osteoarthritis of both knees, and obstructive sleep apnea. (Tr. 340). During this appointment, plaintiff was referred to a dietitian and for bariatric surgery due to his obesity. *Id.* Plaintiff reported he could not stand for more than five minutes at a time, and the tops of his feet hurt constantly, feeling like they would "split open." (Tr. 341). On examination, extremities revealed 1+ pitting edema of both ankles with normal gait and tone. (Tr. 342). Dr. Adkins noted that plaintiff's shortness of breath with exertion was worsening and that he suffered from pain in his knees. (*Id.*).

The following month, plaintiff met with Dietician Lacie Grosch, RDN, LD to discuss weight loss, bariatric surgery preparation, and a low sodium/DASH diet. (Tr 486). Plaintiff was assessed with obesity with serious comorbidity, essential hypertension, and a BMI of greater than

---

[7] This is the amended onset date.

[8] A BMI range over 40 is considered Class III obesity (formerly morbid obesity), the highest classification in the BMI index. *See* https://my.clevelandclinic.org/health/articles/9464-body-mass-index-bmi (last visited on August 28, 2024).

70. (*Id*.). Ms. Grosch set out diet and exercise goals to help plaintiff lose weight and gain control over his obesity. (*Id*.). Plaintiff also underwent a sleep study in June 2021. (Tr. 338). He was assessed with moderate obstructive sleep apnea/hypopnea syndrome and severe oxygen desaturation. (Tr. 338).

Plaintiff had a follow-up appointment with Dietician Grosch in July 2021 (Tr. 481-82) and September 2021 (Tr. 469-70). He was assessed with severe obesity, essential hypertension, a BMI of over 70, and the need for dietary counseling and surveillance. The appointment focused on weight loss, bariatric surgery preparation, and giving plaintiff a low sodium diet.

On August 27, 2021, plaintiff again saw Dr. Adkins. (Tr. 259). Diagnoses included obstructive sleep apnea, moderate nocturnal hypoxia, which was being treated with a CPAP machine, essential hypertension, obesity with serious comorbidity, dyspnea on exertion, and osteoarthritis of both knees. (*Id*.). Plaintiff underwent aspirations and injections in both of his knees to treat his osteoarthritis and resultant pain. (Tr. 260). Plaintiff weighed 504.6 pounds with a BMI of 72.39. (*Id*.). On examination, he exhibited no clubbing, cyanosis, or edema of the extremities; a normal gait and tone; pain and crepitation with range of motion of the knee; and crepitations with movement of the patellofemoral joint. (Tr. 263).

On October 7, 2021, plaintiff met with Dr. Adkins for a physical and follow-up appointment to discuss blood pressure and obesity. (Tr. 540). Plaintiff had gained 18 pounds since his last appointment and weighed 522.8 pounds with a BMI of 75.01. Dr. Adkins reported that plaintiff's overall condition was worsening, and she described the weight gain as rapid. (Tr. 542). On examination, plaintiff exhibited no clubbing, cyanosis, or edema of the extremities and normal gait and tone. (Tr. 544).

9

At a follow up visit with Dr. Adkins in December 2021, plaintiff's weight increased to 547.2 pounds with a BMI of 78.51. Plaintiff began Semaglutide for weight loss management. (Tr. 594). Plaintiff was still awaiting bariatric surgery. In addition to his diagnoses of essential (primary) hypertension, obesity with serious comorbidity, dyspnea on exertion, osteoarthritis of both knees, and obstructive sleep apnea, plaintiff was also assessed with nocturnal hypoxemia, pain in the right and left knees, and "other chronic pain." (Tr. 592).

Plaintiff returned to Dr. Adkins on March 11, 2022. (Tr. 589). His weight had increased to 561 pounds, with a BMI of 78. Dr. Adkins completed a medical source statement of ability to do work-related activities (physical). Dr. Adkins opined that plaintiff could occasionally lift and carry up to 10 pounds based on dyspnea with minimal exertion and a BMI of 78. (Tr. 582). She opined that plaintiff could sit for 30 minutes at one time, stand for 10 minutes at one time, and walk for 5 minutes without interruption. (Tr. 583). Dr. Adkins reported that plaintiff required a cane to ambulate "most of the time"; the use of a cane was medically necessary; and plaintiff was able to ambulate only 20 feet without use of a cane. (Tr. 583). In terms of the medical and clinical findings supporting these limitations, Dr. Adkins noted that plaintiff was slow to rise, had slow ambulation, and had signs of discomfort including facial grimaces with ambulation. *Id.* Plaintiff could occasionally reach overhead, reach in general, and push/pull bilaterally, but he could never feel on the back of his right hand; never climb stairs, ladders, or scaffolds; and could never stoop, kneel, crouch, or crawl due to dyspnea with minimal exertion. (Tr. 584-85). Dr. Adkins also opined that plaintiff could occasionally be exposed to unprotected heights, humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme heat. (Tr. 586). Dr. Adkins concluded that plaintiff would be absent from work more than four days per month, he could not

walk a block at a reasonable pace or on uneven surfaces, and he could not use standard public transportation. (Tr. 586-87).

The ALJ found Dr. Adkins' opinions "somewhat persuasive" "[g]iven that the [plaintiff]'s impairments – both respiratory and orthopedic in nature – are complicated by the significant degree of his obesity." (Tr. at 20). The ALJ, however, rejected Dr. Adkins' opinion that use of a cane was medically necessary:

> [Dr. Adkins] also found that the claimant requires the use of a cane to ambulate "most of the time" as he is unable to ambulate more than 20 feet without such use and noted that the claimant is slow to rise, slow to ambulate and shows signs of discomfort including facial grimacing on ambulation. However, a review the claimant's treatment records does not support [a] finding that the use of an ambulatory device, including the use of a cane, is medically necessary. Recall that throughout the record, which mostly includes Dr. Adkins' office notes, the claimant's gait is described as normal, and there have been treatment occasions in which the claimant has presented with no edema (Exhibits 1F at 17, 66, 139, 187 / 2F at 9 / 4F) [Tr. 263, 312, 385, 433, 465, 588-623]. Those same records document other unremarkable examination findings: muscle tone is normal. Lungs are clear to auscultation bilaterally with good air movement. Heart rate and rhythm is regular. The claimant is neurologically intact with no motor or sensory deficits noted (Exhibits 1F / 2F / 4F) [Tr. 247-580, 588-623].

(Tr. 20).

Plaintiff argues, and the Court agrees, that the ALJ erred in his supportability finding. 20 C.F.R. § 404.1520c(b)(2), (c)(1). As discussed above, the supportability factor requires an examination of the medical source's opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). While the consistency factor requires the ALJ to compare the source's opinion to the *other* record evidence, supportability "addresses whether a medical professional has sufficient justification for their *own* conclusions." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (emphasis in the original) (citing *Crystal E.J. v.*

*Comm'r of Soc. Sec.*, No. 2:21-cv-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022)).  The ALJ is required to "explain how [he] considered the supportability" factor under the regulations. 20 C.F.R. § 404.1520c(b)(2).

The ALJ was required to evaluate and explain the extent to which Dr. Adkins' opinions were or were not supported by her objective findings and explanations.  *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00176, 2022 WL 4395682, at *6 (S.D. Ohio Sept. 23, 2022) (ALJs are "required to explain their evaluation of the supportability and consistency factors.  [20 C.F.R. § 404.1520c(b)(2)].  The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs").  While the ALJ disagreed with Dr. Adkins' opinion that plaintiff's use of a cane was medically necessary based on office notes showing normal gait and "occasions" of no edema, the ALJ's decision omits any clear analysis of the other limitations imposed by Dr. Adkins.  As a result, the Court is unable to discern whether these opined limitations were included in the "somewhat supported" portions of Dr. Adkins' opinions or not.

For example, Dr. Adkins opined that plaintiff would likely be absent four days or more because of his impairments or treatment.  (Tr. 586).  The ALJ's decision does not mention this opined limitation anywhere in the written decision.  Dr. Adkins also opined that plaintiff could "never" climb stairs, ramps, ladders or scaffolds, stoop, kneel, crouch or crawl due to pain with range of motion in both knees.   (Tr. 585).  It is clear that the ALJ did not accept these limitations given the ultimate RFC for "occasional" postural limitations[9], but the language of the ALJ's decision suggests he did find Dr. Adkins' postural limitations "somewhat persuasive."  The ALJ's decision states:

> [Dr. Adkins reported plaintiff] experiences dyspnea with minimal exertion and a
> BMI of 78.  Thus, she found the claimant is able to lift/carry no more than 10

---

[9] The RFC provides for "occasional" ramps and stairs and "occasional" stooping, kneeling, and crouching.  (Tr. 19).

pounds, *and among her suggested restrictions, imposed a mixture of postural*, safety, and environmental limitations. Given that the claimant's impairments – both respiratory and orthopedic in nature – are complicated by the significant degree of his obesity, [Dr.] Adkins' opinion evidence is *somewhat persuasive in this respect*."

(Tr. 20) (emphasis added).

On the one hand, the ALJ appears to accept Dr. Adkins' postural limitations. Conversely, the ALJ appears to implicitly reject these postural limitations given the ultimate RFC finding for "occasional" ramps and stairs and "occasional" stooping, kneeling, and crouching. (Tr. 19). As the ALJ failed to explain why Dr. Adkins' opinion on absences and postural limitations was unsupported, the court cannot conclude the ALJ complied with the regulatory requirements of 20 C.F.R. § 404.1520c(b)(2).

"[A]n ALJ's failure to follow agency procedures does not constitute harmless error when it prevents [the Court] from meaningfully reviewing his or her decision. . . ." *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018). In the absence of an explanation on whether Dr. Adkins' the other stated limitations were supported or not, the Court finds the ALJ's persuasiveness evaluation of Dr. Adkins' opinions is not supported by substantial evidence. The Court further finds this error is not harmless for an additional reason. The ALJ's hypothetical question to the VE included the ability for "occasional" ramps and stairs and "occasional" stooping, kneeling, and crouching. (Tr. 54). The VE did not testify that plaintiff could still perform the sedentary jobs identified if his ability to perform these particluar tasks was completely eliminated, as opined by Dr. Adkins. Therefore, this matter must be remanded for an evaluation of the supportability of Dr. Adkins' opinions pursuant to 20 C.F.R. § 404.1520c(c)(1), including an explanation by the ALJ for his findings.

In addition, the ALJ failed to properly consider the consistency factor under 20 C.F.R. §
404.1520c(c)(2). An evaluation of the consistency factor "involves comparing a medical opinion
or prior administrative medical finding with *the evidence from other medical sources and
nonmedical sources* in the claim." *Teresa A*., 2024 WL 62646, at *4 (quoting *Cindy F. v.
Comm'r of Soc. Sec.*, No. 3:21-cv-047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022))
(quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added)). The ALJ's decision does not discuss
the consistency of Dr. Adkins' opinions with the other medical sources and evidence in the
record. The Commissioner acknowledges that the ALJ did not use the term "consistency" in his
evaluation of Dr. Adkins' opinion. The Commissioner contends, however, that the ALJ
nevertheless addressed the consistency of Dr. Adkins' opinions because he discussed some of the
notes from other medical sources, "particularly the cardiac test results from Timothy Kathman,
M.D. and Brian Dulin, M.D." (Doc. 11 at PAGEID 681, citing Tr. 600-23). The ALJ's decision
references a cardiac workup showing a normal "ejection fracture" measurement of 67%.[10]
However, the ALJ did not cite this cardiac evidence to contrast Dr. Adkins' postural limitations
with the other record evidence. Rather, the ALJ cited the cardiac evidence in concluding that
plaintiff did not require supplemental oxygen beyond the prescribed nocturnal use and in finding
no more than occasional exposure to temperature extremes, humidity, wetness, dust, odors,
fumes, and pulmonary irritants. (Tr. 21). In addition, while the ALJ cited clinical evidence
showing plaintiff has some knee pain and crepitation with range of motion and bilateral lower
extremity edema for which weight loss has been "strongly enc[ouraged]" (Tr. 20, 21), this

---

[10] It is also questionable whether the ejection fraction cited by the ALJ is an accurate measurement of plaintiff's
cardiac function given the limitations of cardiac stress testing noted by Dr. Kathman. Dr. Kathman explained the
cardiac perfusion imaging quality was limited due to plaintiff's body habitus and "gated nuclear isotope cardiac
images could not be obtained for determination of ejection fraction or wall motion." (Tr. 614).

14

11111111111

evidence was cited in connection with the ALJ's consideration of the persuasiveness of the State Agency physicians' opinions, whose opinions the ALJ found "overstated" plaintiff's physical capacity. In addition, the ALJ did not compare the opinions and findings of the State Agency physicians, who provided the only other opinion evidence in the record, with those of Dr. Adkins. The Court is simply unable to conclude that the ALJ met his duty to explain the consistency factor based on this evidence. This matter must be remanded for an evaluation of the consistency of Dr. Adkins' opinions with the other opinion and record evidence pursuant to 20 C.F.R. § 404.1520c(c)(2), including an explanation by the ALJ for his findings.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **SUSTAINED.** The decision of the Commissioner is **REVERSED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this decision.

Date: 8/28/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

15